IN THE COURT OF APPEALS
AT KNOXVILLE

**FILED**

**April 15, 1999**

**Cecil Crowson, Jr.**
**Appellate Court**
**Clerk**

EVAN B. MCKINLEY,                    ) HAMBLEN PROBATE
                                     ) C.A. No. 03A01-9807-PB-00220
                                     )
        Plaintiff/Appellant,         )
                                     )
                                     ) HON. JOYCE WARD
vs.                                  ) JUDGE
                                     )
                                     )
ELIZABETH JANE HOLT,                 )
                                     )
                                     )
        Defendant/Appellee.          ) AFFIRMED AND REMANDED
                                     )

CLINTON R. ANDERSON, for Appellant.

JIM W. STAMBAUGH, for Appellee.

O P I N I O N

McMurray, J.

This appeal arises from a dispute between a brother and a sister over their father's estate. Appellant Evan B. McKinley argues that a confidential relationship existed between his sister, appellee Elizabeth Jane Holt, and their father and testator, Evan H. McKinley ("Mr. McKinley"), and that his sister exerted undue influence on their father to leave the bulk of his estate to her. The trial court held that a confidential relationship did not exist between Mrs. Holt and her father and that she did not exert undue influence on her father regarding the terms of his will.

The appellant presents four issues for our consideration:

1. Did the trial court err in finding that there was no confidential relationship between the testator and his daughter, as a matter of law?

2. Did the trial court err in finding that a confidential relationship between the testator and his daughter was not shown by a preponderance of the evidence?

3. Did the trial court fail to apply the proper burden of proof against the proper party?

4. Does the evidence preponderate against the trial court's ruling that there was no undue influence, and that the proposed will was that of the testator?

After a careful review of the record, we affirm the judgment of the trial court in all respects.

Mr. Evan H. McKinley, the testator, lived in Morristown, with his wife of nearly fifty years, Jane McKinley. Mr. McKinley had been a photographer, and Mrs. McKinley had helped him in his studio as well as being a teacher for many years. The McKinleys had two adult children, Evan B. and Elizabeth Jane. Evan B. McKinley is an engineer by training, and Elizabeth Jane Holt is a certified public accountant.

Although relationships among family members had been strained, they deteriorated rapidly in the year following Mrs. McKinley's death on September 25, 1995. It was after her mother's death that Mrs. Holt learned how much money her mother had loaned her brother over the years. Mrs. McKinley had loaned him approximately $60,000, and Mr. McKinley had loaned him $3,000. The appellant admitted at trial that he is an alcoholic and has had difficulty in maintaining steady employment. He also acknowledged that he had filed for bankruptcy.

2

Several months after Mrs. McKinley's death, Mr. McKinley and his two children went to two banks to change the signature cards. The appellant testified that his sister would not allow him to have access to the checking accounts, and Mrs. Holt acknowledged that that was correct. She testified that she did not want her brother to have access to the accounts because she was concerned that if he had access to the accounts he would squander the money, in light of his personal bankruptcy. Furthemore, she testified that her brother had access to a safety deposit box from which items were missing, including a ring that he was wearing the day of the trial. Appellant filed a claim against his mother's estate, which he asserts was at the estate attorney's urging, for 122 3/4 hours at $15.00 per hour for his participation in administering his mother's estate. According to testimony at trial, this claim against the estate by the appellant angered Mr. McKinley, especially since the appellant owed his mother approximately $60,000 at the time of her death.

On May 12, 1996, the appellant and his father went to lunch after church, and Mr. McKinley became angry with the appellant during their lunch. Then in June 1996, the appellant sent his father a Father's Day card, and on the back of the card, the appellant had written the following:

> As I'm sure you remember, my offer still stands: No contact except in emergencies (or by mail) until you're willing to talk about the three things we disagreed about in early May that Sunday: (1) You play favorites with Betty verses [sic] me--she does no wrong & I'm often wrong you think (2) You virtually never express any interest in me, my life, or contact me (you called only twice since Mom died 9 months ago!) (3) Rather than be grateful for how I've helped you (encouraging you to see doctors about your leg, getting groceries, taking the trash down, checking on you, etc.), you

3

disagree with everything I urge you to do & then you complain to relatives I'm ignoring you! Remember, I am your son & your first born--that should mean something to you.

Mrs. Holt testified that her father became fearful for his safety after he received this card, so she assisted him in having the locks to his home changed so that the appellant could not enter. She notified her brother by letter that the locks had been changed. Also, earlier in June, Mr. McKinley executed a power of attorney naming his daughter as his attorney in fact, should he become disabled or incapacitated.

In August 1996, Mr. McKinley traveled to his daughter's home in Raleigh, North Carolina. Mrs. Holt testified that her father came to stay with her children while she accompanied her husband on a business trip. Later that month, Mr. McKinley executed a new will, leaving the appellant his home in Morristown and leaving his daughter his property in Grainger County. Mr. McKinley died the following month on September 25, 1996, exactly one year after his wife.

The trial court held that a confidential relationship did not exist between Mrs. Holt and her father and that Mrs. Holt did not exert undue influence on her father regarding his will.

Three of the appellant's four issues concern whether a confidential relationship existed between his sister and their father, and if such a relationship did exist, the trial court erred by not shifting the burden of proof to Mrs. Holt as the proponent of the will to prove its fairness.

First, the appellant argues that there existed a confidential relationship between his sister and his father based upon the power of attorney that was executed before Mr. McKinley's death. The appellant "asks this court to hold that that [sic] this power of attorney, in and of itself, created a fiduciary relationship, calling into effect the presumption of invalidity of the will, and putting the burden on the proponent to prove the fairness of the will, notwithstanding the 'springing clause.'"

In the alternative, the appellant asserts that a confidential relationship existed between his sister and their father because his sister exercised dominance and control over their father. First, he argues that because Mr. McKinley's physical and mental condition had deteriorated, he was more vulnerable to his sister's control. Specifically, he cites that his father had suffered a heart attack, was afflicted with Bell's palsy, was upset over the death of his wife, and could not handle his finances, in some cases failing to pay bills.

Next, he contends that when the three of them went to the banks to change signature cards, his sister took the cards out of his hand, saying "he doesn't need to sign these." He maintains that he protested, but his father did not say anything. At the other bank, the appellant testified that his sister told him to stay in the car, and then she and their father went inside and changed the accounts so they were joint with survivorship as between them. In her testimony, Mrs. Holt denied taking the cards out of her brother's hands, but did acknowledge that she

5

advised her father not to allow her brother to have access to the bank accounts.

Furthermore, the appellant asserts that in June 1996, his sister called a locksmith and had the locks changed to their father's house so that he could not enter the house. He argues that it was during that same trip that their father executed a power of attorney appointing his sister as his attorney in fact. In addition, he notes that his sister admitted preparing an objection to his claim against his mother's estate.

The appellant also contends that his sister helped procure their father's will and received a rough draft of it. He further argues that she knew about offers their father had received to purchase his Grainger County land and that after the rough draft was completed, his sister helped pay for Mr. McKinley's trip to her home in Raleigh, North Carolina for a visit. Lastly, the appellant argues that his sister's dominance over their father explains the deterioration of his relationship with his father.

Therefore, the appellant maintains that "if the power of attorney by itself does not establish a confidential relationship, it does when combined with the above circumstances," and thus, the burden of proof would shift to his sister as the proponent of the will to prove its fairness.

With respect to the existence of a confidential relationship between her father and herself, Mrs. Holt argues that such a relationship, at least in the legal sense, did not exist. First, she acknowledges that her father executed a power of attorney

6

making her his attorney in fact, but notes that it was subject to the following restriction: "Pursuant to any common law and the stuatory [sic] law and pertinent sections thereof of this State, I declare that this power of attorney shall become effective upon my disability or incapacity, which shall be determined by the certification of my personal physician, but not until then. . .." Mrs. Holt asserts that the power of attorney that her father executed was a restricted power of attorney, not an unrestricted power of attorney as her brother argues. Therefore, Mrs. Holt maintains that the power of attorney executed by her father did not create a confidential relationship as a matter of law because the power of attorney never came into effect.

Furthermore, Mrs. Holt argues that she did not dominate or control her father. She maintains that there was no indication that her father was in "a weakened mental condition," although he was sad about the death of her mother. She contends that she did not exercise dominion over her father, although they did discuss her brother's attitude toward their father. In addition, Mr. Edward Moody, a friend of Mr. McKinley's and an attorney, testified that Mr. McKinley was not someone who could be easily influenced.

Mrs. Holt admits that she and her father did not want the appellant's name on the bank accounts, in light of his bankruptcy and chronic financial problems, and that the locks were changed in June 1996 after her father received the Father's Day card from the appellant in which he told Mr. McKinley not to contact him until he was willing to discuss several issues important to the son. Although Mrs. Holt admits she prepared the objection to her

7

brother's claim against their mother's estate, she maintains that $15.00 per hour for 122 3/4 hours was "ridiculously high," especially since her brother's debts had bankrupted her mother's estate. Finally, regarding her father's will, she acknowledges that he sent her a rough draft, but does not remember discussing the matter with him. In addition, she acknowledges helping to pay for her father's trip to Raleigh, but maintains that the trip was for her father to stay with her children while she accompanied her husband on a business trip.

Thus, Mrs. Holt asserts that she did not have a confidential relationship, in the legal sense, with Mr. McKinley, and thus, she does not have the burden to prove the fairness of the will.

CONFIDENTIAL RELATIONSHIP

We review the findings of fact by the trial court de novo. The court's findings are accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d). No such presumption attaches to the trial court's conclusions of law. Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993).

In 1995, the Supreme Court held that an unrestricted power of attorney creates a confidential relationship between the parties as a matter of law. Matlock v. Simpson, 902 S.W.2d 384, 386 (Tenn. 1995). In 1996, this Court held "that a power of attorney that has not yet taken effect, and which may be altered or revoked at any time by the person granting it cannot be

8

considered to be unrestricted." Garton v. Norman, No. 01-A-01-9511 (Tennessee Court of Appeals, filed June 14, 1996, at 4).

"[T]he relationship of parent and child standing alone does not create a confidential relationship, the first requisite toward the presumption of undue influence." Harper v. Watkins, 670 S.W.2d 611, 628 (Tenn. Ct. App. 1983)(citing Kelly v. Allen, 558 S.W.2d 845, 847 (Tenn. 1977)). A confidential relationship "is that relationship where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party." Iacometti v. Frassinelli, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973) (citations omitted).

We address first whether a confidential relationship existed as a matter of law between Mrs. Holt and her father. The power of attorney executed by Mr. McKinley contained the following restriction: "this power of attorney shall become effective upon my disability or incapacity, which shall be determined by the certification of my personal physician, but not until then. . .." Although appellant argues that an unrestricted power of attorney was created, we agree with the trial court that the power of attorney never came into effect because Mr. McKinley was never certified by his physician as disabled or incapcitated, and therefore, a confidential relationship as a matter of law did not exist.

We now turn to the issue of whether Mrs. Holt exerted dominance and control over her father such that a confidential

9

relationship existed between them.  After his wife's death, Mr. McKinley apparently consulted his daughter, an accountant, about financial matters and other personal matters and did execute a power of attorney making her his attorney in fact.  Although the appellant argues that his sister's dominance caused the deterioration of his relationship with his father, several actions by the appellant after his mother's death apparently angered Mr. McKinley.  Although the appellant's credit card debts had bankrupted his mother's estate, he filed a claim against the estate for 122 3/4 hours at $15.00 per hour for his help in administering her estate.  This claim, along with the Father's Day card the appellant sent, apparently contributed greatly to the deterioration of the relationship between Mr. McKinley and the appellant shortly before Mr. McKinley executed a new will.  Finally, Mr. Moody, a friend and an attorney, testified that Mr. McKinley was competent to make a will and was not someone who was easily influenced.

The evidence does not preponderate against the trial court's determination that Mrs. Holt did not exercise dominion or control over their father such that a confidential relationship existed between them.  Having found that a confidential relationship did not exist, we need not address the issue regarding the burden of proof.

UNDUE INFLUENCE

In his fourth issue, the appellant asserts that his sister exerted undue influence on their father concerning his will.  To

10

prove undue influence, the appellant relies on the "suspicious circumstances," with the exception of circumstances seven and eleven, enumerated in Mitchell v. Smith, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989):

> (1) the existence of a confidential relationship between the testator and the beneficiary; (2) the testator's physical or mental deterioration; (3) the beneficiary's active involvement in procuring the will; (4) secrecy concerning the will's existence; (5) the testator's advanced age; (6) the lack of independent advice in preparing the will; (7) the testator's illiteracy or blindness; (8) the unjust or unnatural nature of the will's terms; (9) the testator being in an emotionally distraught state; (10) discrepancies between the will and the testator's expressed intentions; and (11) fraud or duress directed toward the testator.

Id. (citations omitted).

We have previously discussed the first three factors enumerated in Mitchell.  Suffice it to say that they do not show undue influence in this case.  The appellant relies upon the remaining Mitchell factors.  First, he argues that his father's advanced age of seventy-eight and his emotional state after his wife's death made him particularly vulnerable to influence.  Second, he contends that he did not know of the will's existence, whereas his sister had seen the rough draft and he suspected that his sister had discussed the will with their father, citing a lengthy telephone conversation four days before the new will was executed.

Next, the appellant addresses the factors of the unjust nature of the will's terms, discrepancies between the will and his father's expressed intentions, and a lack of independent

11

advice.  The appellant first contends that earlier wills of his father's had treated him and his sister equally, and even as late as May 1996 during a meeting with Mr. Moody, his father apparently wanted to equalize things in his will. Yet, three months later, his new will left property Mr. McKinley thought was worth $750,000 to his sister and property worth $50,000 to him. The appellant maintains that this was in no way an equalization and must have "resulted from undue influence from [his sister], who thought that she deserved more."  Lastly, the appellant notes that his sister's attorney drafted Mr. McKinley's will, although he acknowledges that there is proof that his father received independent advice from Mr. Moody, an attorney.

Mrs. Holt argues that the factors in Mitchell are inapplicable.  With respect to her father's advanced age and his emotional state, she asserts that her father's "age had nothing to do with his abilities" and that although he was sad about the death of his wife, there is no indication that his sadness or his age had overcome his ability to manage his personal affairs.  She denies that there was any secrecy of the will's existence by explaining that her father and the appellant were not speaking to one another when the will was executed, largely due to the appellant's own actions toward their father.  She further asserts that Mr. Moody gave independent advice to her father and testified that her father had a mind of his own and could not be easily influenced.  Regarding the factors of unjust or unnatural terms of the will and discrepancies in the will and the testator's expressed intentions, Mrs. Holt maintains that the appellant received a home, which he needed, only after she urged her father not to leave him out of the estate entirely. Finally,

she maintains that the appellant's lack of financial management, the Father's Day card he sent to their father, and the lack of communication, which her brother requested, between her father and the appellant in the final months of her father's life explain the discrepancies.

Although the appellant argues that the circumstances surrounding the execution of his father's will warrant suspicion under Mitchell, we disagree.  As we noted earlier,  Mr. McKinley appeared to rely on his daughter somewhat after his wife's death, although Mrs. Holt lived in another state.  While Mr. McKinley did have some health problems, they did not appear to affect his ability to function.  Furthermore, he received advice from Mr. Moody regarding the terms of his will and then decided himself how he wished to dispose of his property.  Although the appellant complains about not knowing of the will's existence and the unfairness of its terms, he never acknowledges that his own actions could possibly have contributed to the deterioration of his relationship with his father.  The appellant himself told his father that he did not want to have contact with him until he was willing to discuss certain issues.  Therefore, the appellant cannot now complain that he did not know about the existence of his father's new will and its terms when it was he who ended any communication with his father.   Accordingly, we conclude that Mrs. Holt did not exert undue influence on her father regarding the terms of his will.

Therefore, we affirm the judgment of the trial court in its entirety.  Costs are assessed to the appellant, and this case is remanded to the trial court.

13

**PER CURIUM ORDER**

The foregoing opinion, prepared by Judge Don T. McMurray, late member of the Court and now deceased, is now approved and adopted as the opinion of the Court.

_____
Herschel P. Franks, Judge

_____
Charles D. Susano, Jr., Judge